IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00236-PAB-KLM

JACK TORRES,

    Plaintiff,

v.

ASSISTANT WARDEN O'NEAL, Correctional Corporation of America (CCA),
CHIEF EARHART, Correctional Corporation of America (CCA), Kit Carson Correctional Center (KCCC),
SARGEANT [sic] CANTONWINE, Colorado Department of Corrections (CDOC), Arrowhead Correctional Center (ACC), and
JOHN DOE & JANE DOE 1-10,

    Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Cantonwine's **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) or for Summary Judgment** [Docket No. 30; Filed August 23, 2010] ("Cantonwine's Motion for Summary Judgment")[1] and Defendant Erhart and Defendant Neal's **Motion for Summary Judgment** [Docket No. 34; Filed

---

[1] Defendant Cantonwine's Motion seeks dismissal of the first and third claims in Plaintiff's Amended Complaint [Docket No. 14] pursuant to Fed. R. Civ. P. 12(b)(1) and (6), or, in the alternative, entry of summary judgment against Plaintiff on those claims pursuant to Fed. R. Civ. P. 56. The Motion presents just one reason that dismissal or summary judgment is appropriate: Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e)(a). *Cantonwine's Motion for Summary Judgment* [#30] at 7-8; *see* Parts I.E. and II of this Recommendation, *infra*. An inmate need not plead or demonstrate exhaustion of administrative remedies in his complaint. *Jones v. Bock*, 549 U.S. 199, 216-17 (2007). Failure to exhaust administrative remedies is therefore an affirmative defense and not a pleading deficiency that supports dismissal for failure to state a claim. Accordingly, the Court construes Defendant Cantonwine's Motion as one for summary judgment pursuant to Fed. R. Civ. P. 56.

September 30, 2010] ("Erhart & Neal's Motion for Summary Judgment").[2] On October 13, 2010, Plaintiff, who is proceeding *pro se*, filed a Response [Docket No. 36] (the "Response to Cantonwine's Motion") in opposition to Cantonwine's Motion for Summary Judgment [#30]. On October 27, 2010, Defendant Cantonwine filed a Reply [Docket No. 37]. On November 26, 2010, Plaintiff filed a "Response to Cantonwines [sic] Reply" [Docket No. 41]. Although Plaintiff styled this pleading as an improper surreply[3], it contains argument in opposition to Erhart & Neal's Motion for Summary Judgment [#34]. Therefore, the Court disregards the portions of the pleading related to Defendant Cantonwine's Reply [#37] and construes the remainder of the pleading, pages 4-6, as a response in opposition to Erhart & Neal's Motion for Summary Judgment [#34]. Accordingly, Plaintiff's "Response to Cantonwines [sic] Reply" [#41] will be referred to hereinafter as "Response to Erhart & Neal's Motion."

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motions for Summary Judgment [#30 and 34] have been referred to this Court for a recommendation regarding disposition. The Court has reviewed the Motions, Plaintiff's Responses [#36 and 41], Defendant Cantonwine's Reply [#37], the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court

---

[2] Plaintiff's Amended Complaint [#14] lists "Assistnat [sic] Warden O'Neal" and "Chief Earhart" as Defendants. The intended Defendants are in fact Kit Carson Correctional Center Assistant Warden Steven Neal and Chief Jason Erhart. *See Erhart & Neal's Motion for Summary Judgment* [#34] at 1 n.1 & n.2. Herein the Court will refer to these Defendants simply as "Neal" and "Erhart."

[3] Because surreplies are neither contemplated by the Federal Rules of Civil Procedure nor permitted by this Court's Local Rules of Practice, they are improper and the Court does not consider them. See D.C.COLO.LCivR 7.1C (permitting only motions, responses, and replies). Accordingly, the Court does not consider the portion of Plaintiff's "Response to Cantonwines [sic] Reply" [#41] that relates to Defendant Cantonwine's Reply [#37].

respectfully **RECOMMENDS** that the Motions be **GRANTED**.

## I. Summary of the Case

Plaintiff is an inmate at the Colorado Department of Corrections ("CDOC") Sterling Correctional Facility. He was previously incarcerated at CDOC's Arrowhead Correctional Center ("Arrowhead") and Kit Carson Correctional Facility ("Kit Carson"), a prison facility privately operated by the Corrections Corporation of America ("CCA"). On June 2, 2010, Plaintiff filed an Amended Complaint [#14] asserting five claims. On June 10, 2010, Senior District Judge Zita L. Weinshienk issued an Order [Docket No. 15] dismissing Plaintiff's second and fifth claims as legally frivolous. The Court summarizes Plaintiff's first, third, and fourth claims below.

### A.     Plaintiff's First Claim

Plaintiff asserts that Defendant Cantonwine ("Cantonwine") violated the rights guaranteed to him by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by harassing him, humiliating him, and treating him differently from other inmate kitchen workers at Arrowhead. *Amended Complaint* [#14] at 6-8. Plaintiff alleges the following history as the basis for his claim. On June 12, 2008, Plaintiff was moved to the "Therapeutic Community," a housing unit at Arrowhead. *Id.* at 6. The Therapeutic Community is a "highly structured [Alcohol and Drug Abuse Division] approved treatment modality" located apart from the general inmate population at Arrowhead. *Id.* As part of the Therapeutic Community treatment program, Plaintiff was required to work for ninety days in the Arrowhead kitchen beginning in July 2008. *Id.* Cantonwine was the "head Food Supervisor" in the kitchen. *Id.*

While Plaintiff was working in the kitchen, Cantonwine "ordered" him to "complete difficult tasks" under "humiliating circumstances." *Id.* For example, Plaintiff was repeatedly ordered to "clean the grease hood vents" without being provided a mask to wear for protection from the "dangerous" kitchen cleaning chemicals that made him "sick to the stomach." *Id.* at 12. Cantonwine also "gave unequal orders" to Plaintiff as compared to the other inmates under his supervision. *Id.* Cantonwine "singled out" Plaintiff for disparate treatment because Plaintiff was part of the Therapeutic Community. *Id.* at 7 (explaining that because inmates can be terminated from the Therapeutic Community for disobedience, Therapeutic Community inmates face more serious consequences for refusing to perform undesirable tasks at their prison jobs than do general population inmates); *see also id.* ("Defendant [Cantonwine] acted in a malice intent to discriminate [Plaintiff] based on he in a highly structured program [sic]."); *id.* at 8 ("Inmates who are not in the Therapeutic Community working for food service . . . would not [face such serious consequences for disobedience] as would an inmate involved in Therapeutic Community."). Plaintiff did not "voice his concerns" about the way he was treated by Cantonwine because he feared "[retaliatory] acts" and "termination" from the Therapeutic Community, which would have "lead to many consequences like loss of earned time, est [sic] back from parole, non-[acceptance] to community corrections, being deemed non-program compliant, [and] restricted [privileges]." *Id.* at 7.

Plaintiff asserts that Cantonwine's discriminatory and humiliating treatment of Plaintiff culminated on October 7, 2008, the last day of Plaintiff's kitchen detail. *Id.* at 7. On that day, Cantonwine presented Plaintiff with a facetious award certificate printed with the following text:

Certificate of Depreciation
Is Awarded To
Jack Torres
[Arrowhead Correctional Center] Food Service Worker

The More I Got to Know You, The Less I Realized You Worth

*Amended Complaint* [#14] at 23 (Exhibit A to the Amended Complaint).  Cantonwine presented the certificate to Plaintiff in the presence of two other CDOC food service employees, Sergeant "Cloey" and Lieutenant "Erickson."  *Id.* at 7; *see also id.* at 12 ("There were other CDOC employees present, laughing at [Plaintiff].").  Plaintiff was "very humiliated" by this presentation.  *Id.* at 7.

### B.    Plaintiff's Third Claim

Plaintiff asserts that Cantonwine's above-detailed conduct violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131-32.  *Id.* at 12-13.  Plaintiff alleges that he "is a disabled individual," and he claims that Cantonwine discriminated against him because of his disability.  *Id.* at 13.  Plaintiff does not specify his purported disability, but he suggests, without any support, that persons "who are seeking treatment to recover from psychological or physical impairment" are disabled within the meaning of the ADA.  *Id.*

### C.    Plaintiff's Fourth Claim

Plaintiff's fourth claim alleges three distinct Eighth Amendment violations.  Plaintiff asserts that while he was incarcerated at Kit Carson, Defendants Erhart and Neal violated the rights guaranteed to him by the Eighth Amendment to the United States Constitution by (1) denying him "the proper amenities[,] like hygiene and recreation time, clean clothes, [and] clean exchange of sheets and blankets," *id.* at 14; (2) failing to "take measures to guarantee [his] safety" and "protect him from violence at the hand[s] of other inmates," *id.*;

and (3) subjecting him to "physical and psychological abuse," *id.* at 15. Plaintiff alleges the following facts in support of these three claims.

Plaintiff was relocated from Arrowhead to Kit Carson on or about December 22, 2008. *Id.* at 14, ¶56. On July 9, 2009, there was an incident involving rival "security threat groups" – essentially prison gangs – at Kit Carson. *Id.* at 14. Plaintiff was not part of the confrontation between the rival groups, but he was mistakenly identified as a participant and confined to a "segregation overflow," or "A-C," housing unit within the prison. *Id.* Plaintiff remained in the "A-C" unit for twenty-six days while he awaited an administrative hearing on "charges of [inciting] a riot and fighting." *Id.* At the administrative hearing, the charges against Plaintiff were dismissed. *Id.* at 15. Plaintiff remained in the "A-C" unit for five more days after the hearing and then was transferred to the "general population." *Id.* During his thirty-one days in the "A-C" unit, Plaintiff was not provided "the proper amenities[,] like hygiene and recreation time, clean clothes, [and] clean exchange of sheets and blankets." *Id.* at 14. The denial of these "amenities" is the entire basis of Plaintiff's first Eighth Amendment claim against Erhart and Neal.

On August 5, 2009, Plaintiff was moved to the "E-C" housing unit in Kit Carson.[4] *Id.* at 15. The "E-C" unit was known to inmates as the "ThunderDome" because it was a "gang unit" where "tension was very high" and violent conflict between two rival "security threat groups," the "Northerners" and the "Southerners," was common. *Id.* Plaintiff asserts that

---

[4] The Court notes that Plaintiff's allegations regarding the dates of his moves between housing units at Kit Carson are inconsistent. Plaintiff alleges that he arrived at the "A-C" unit on July 9, 2009. He alleges that he spent a total of thirty-one days in the "A-C" unit and then was moved to the "E-C" unit. These allegations have Plaintiff arriving at the "E-C" unit on August 9 or 10, 2009. But Plaintiff later alleges that he arrived at the "E-C" unit on August 5, 2009.

Neal and Erhart "were very well aware of the dangers that were [occurring] in E-C." *Id.* at 15, ¶65. Although there were over one-hundred inmates assigned to the "E-C" unit "pod," there was no correctional officer stationed within the pod "to keep order or to respond reasonably to any violence [or] serious medical [needs]." *Id.* at 15. Because Plaintiff was formerly associated with the "Northerners" he did not want to be assigned to the "E-C" unit. *Id.* He was concerned that he would be attacked by "Southerner" inmates who knew of his former association with the "Northerners." *Id.* Plaintiff expressed his concern for his safety to Neal. *Id.* Neal and Erhart ignored Plaintiff's concerns and "intentionally put [him] in danger." *Id.*

As soon as Plaintiff arrived in the "E-C" unit, "Southerners" recognized him "as being associated with the rival Northerners," and they "immediately approached [him] and assaulted him." *Id.* at 16. After this assault, Plaintiff explained to the "Northerners" in the "E-C" unit that "he did not want to be involved [with them] nor have association." *Id.* The "Northerners" were unhappy with Plaintiff's disloyalty, and they repeatedly assaulted him over a period of four months. *Id.* The assaults suffered by Plaintiff are the basis for his second Eighth Amendment claim against Erhart and Neal.

Plaintiff provides no specific factual allegations to support his third Eighth Amendment claim against Erhart and Neal. Instead, Plaintiff simply states as follows: "[Plaintiff] was subjected by [Neal] and [Erhart] to physical and psychological abuse where he suffers with [anxiety] [and] mental and emotional dismay from all un-wanton [sic] [occurrences] that CDOC and CCA employees inflicted." *Id.* at 15, ¶68.

**D. Relief Sought**

Plaintiff seeks three types of relief: (1) declaratory relief stating that his constitutional rights were violated; (2) compensatory damages; and (3) punitive damages. *Id.* at 45. Plaintiff does not seek injunctive relief.

### E. Cantonwine's Motion for Summary Judgment [#30]

Cantonwine's Motion for Summary Judgment seeks entry of summary judgment against Plaintiff on his first and third claims because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). *Cantonwine's Motion for Summary Judgment* [#30] at 7-8.

### F. Erhart & Neal's Motion for Summary Judgment [#34]

Erhart & Neal's Motion for Summary Judgment seeks entry of summary judgment against Plaintiff on his fourth claim because Plaintiff failed to exhaust his administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). *Erhart & Neal's Motion for Summary Judgment* [#34] at 4-6.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive

law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering whether summary judgment is appropriate in this case, the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*,

404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

Defendants contend that Plaintiff failed to exhaust his administrative remedies with respect to all three of his claims as required by the PLRA, 42 U.S.C. § 1997e(a). The statute provides as follows:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones,* 549 U.S. at 210-12; *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner plaintiff is not required to specifically plead that he has exhausted his available administrative remedies or to attach exhibits proving exhaustion to his complaint. *Jones*, 549 U.S. at 215; *see* n.1, *supra*. The burden is therefore on defendants to raise

failure to exhaust as an affirmative defense in a motion for summary judgment. If the evidence produced by the parties shows that there are no genuine factual issues preventing a finding that the plaintiff did not properly exhaust his available administrative remedies, the complaint must be dismissed without prejudice. *See Dawson v. Werholtz*, No. 07-3165, 2008 WL 1773866, at *1 n.1 (D. Kan. Apr. 16, 2008) (unreported decision) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (Dismissal of unexhausted claims on summary judgment should be without prejudice)).

Prison facilities are tasked with the responsibility of establishing administrative review procedures for addressing prisoner grievances. To satisfy the PLRA exhaustion requirement, a prisoner plaintiff "must 'complete the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88); *see also id.* ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to properly exhaust," *id.*, but compliance must be complete, i.e., the inmate must abide by all of the "agency's deadlines and other critical procedural rules," *Woodford*, 548 U.S. at 90-91. Complete compliance is required "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.*

"The Colorado Department of Corrections provides inmates with administrative remedies pursuant to a 'grievance process' set forth in Administrative Regulation 850-04."

*Affidavit of Anthony DeCesaro* [Docket No. 34-3] at 2, ¶4. The grievance process consists of three steps. *Id.* at 3. First, an aggrieved inmate must file a document known as a Step 1 Offender Grievance Form, to which an appropriate CDOC employee will respond in writing. *Id.* Second, if the inmate is not satisfied with the response, he must file a document known as a Step 2 Offender Grievance Form within five days. *Id.* Again, a CDOC employee will respond in writing. *Id.* Third, if the inmate is still unsatisfied, he must file a document known as a Step 3 Offender Grievance Form within five days. *Id.* "If an inmate fails to timely file either the Step 2 or Step 3 Grievance [Form] within five days of receipt of the response to the prior Grievance [Form], he has failed to comply with the [CDOC] administrative grievance process." *Id.* at 3, ¶10.

In this case, Defendants contend that Plaintiff did not comply with the CDOC grievance process detailed above. In his Amended Complaint, Plaintiff alleges that he exhausted available administrative remedies. *Amended Complaint* [#14] at 44. To support this allegation, Plaintiff attached three Offender Grievance Forms. *Amended Complaint* [#14] at 31-32, 35, and 42. These three Forms relate to the circumstances of Plaintiff's removal from the Therapeutic Community program at Arrowhead and the handling of his requests that he be returned to the program. *See, e.g., id.* at 32 (Step 2 Offender Grievance Form of June 5, 2009 ("On April 30, 2009, I had filed a step one grievance . . . for removing me from my program.")); *see also id.* at 27 (Inmate Request of July 21, 2009 ("I am asking for a progressive move to [the Therapeutic Community] at [Arrowhead] A.S.A.P.")). The Forms do not expressly mention Cantonwine, Erhart, or Neal, and they do not pertain to the alleged conduct underlying Plaintiff's constitutional claims in any way. After reviewing Plaintiff's Amended Complaint [#14] in its entirety, the Court finds that

Defendants have carried their initial burden of demonstrating the absence of evidence that Plaintiff satisfied the PLRA exhaustion requirement.  *See Adler*, 144 F.3d at 671 (The "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.").

Because Defendants carried their initial burden, the burden shifts to Plaintiff to put forth sufficient evidence that he did in fact exhaust his available administrative remedy, the CDOC grievance process.  *See Anderson*, 277 U.S. at 248.  In his Response to Cantonwine's Motion [#36], Plaintiff states that "[o]n or about October 20, 2008, [he] went and informed his case manager about [Cantonwine]'s misconduct and was told that it was a non-grievable issue and was part of [his] therapeutic treatment."  *Response to Cantonwine's Motion* [#36] at 2.  Plaintiff states that because of this advice, he did not mention Cantonwine "by name" on any of the Grievance Forms he filed.  *Id.*

Plaintiff's statements about the advice he received from his case manager are not competent summary judgment evidence.  *See Bones*, 366 F.3d at 875.  Plaintiff did not submit any evidence in support of the statements, and he did not sign his Response to Cantonwine's Motion [#36] under penalty of perjury so that it could be construed by the Court as an affidavit.  Accordingly, Plaintiff's unsupported representation that he was advised against filing a grievance regarding Cantonwine's allegedly unconstitutional conduct is not evidence that Plaintiff exhausted or attempted to exhaust available administrative remedies.

Plaintiff asserts that even though he did not mention Cantonwine, he did address Cantonwine's allegedly unconstitutional conduct in the Grievance Forms he filed.

*Response to Cantonwine's Motion* [#36] at 2. The Court disagrees. Plaintiff's statements in the Grievance Forms are general and vague. *See, e.g., Amended Complaint* [#14] at 35 (Step 1 Offender Grievance Form of May 1, 2009 (stating "I had spoken to staff about the incident," but never specifying what the "incident" was)). Further, Plaintiff employs euphemistic Therapeutic Community terminology that obfuscates the precise nature of his grievances and means nothing to the Court without explanation. *See, e.g., id.* (using the phrase "dealing with adversity" to refer to an unspecified incident). The Grievance Forms attached to Plaintiff's Amended Complaint [#14] simply do not show that Plaintiff attempted to address Cantonwine's alleged constitutional violations through the CDOC grievance process. Moreover, Cantonwine has provided the Court with the affidavit of Anthony DeCesaro ("DeCesaro"), a CDOC "Step 3 Grievance Officer." *Affidavit of Anthony DeCesaro* [#30-1]. In his affidavit, DeCesaro states that he "found no record that [Plaintiff] filed any grievances alleging misconduct by a staff person named Sgt. Cantonwine at any time." *Id.* at 3, ¶12.

The Court concludes that Plaintiff has failed to carry his burden of putting forth sufficient evidence that he exhausted his available administrative remedies with regard to his claims against Cantonwine. It is clear that Plaintiff did not complete – or even begin – the CDOC grievance process to address his complaints about Cantonwine's alleged conduct that is the basis for the first and third claims in this case. There is no genuine issue of material fact with regard to this issue. Accordingly, the Court **RECOMMENDS** that summary judgment be entered against Plaintiff on his first and third claims.

Plaintiff has also failed to put forth sufficient evidence that he exhausted his available administrative remedies with regard to his Eighth Amendment claims against Erhart and

Neal. On the Grievance Forms attached to his Amended Complaint [#14], Plaintiff neither mentioned Erhart and Neal by name nor discussed any of their allegedly unconstitutional conduct. In his Response to Erhart & Neal's Motion [#41], Plaintiff fails to produce any other evidence that he exhausted the CDOC grievance process regarding Erhart and Neal's allegedly unconstitutional conduct. Moreover, Erhart and Neal also rely on an affidavit from DeCesaro, which states as follows: "I have not found any record that [Plaintiff] filed any grievances alleging misconduct by Assistant Warden Steven Neal and Chief Jason Erhart at any time." *Affidavit of Anthony DeCesaro* [#34-3] at 4, ¶12. It is clear that Plaintiff did not complete – or even begin – the CDOC grievance process to address his complaints about Erhart and Neal's alleged conduct that is the basis for the fourth claim in this case. There is no genuine issue of material fact with regard to this issue. Accordingly, the Court **RECOMMENDS** that summary judgment be entered against Plaintiff on his fourth claim.

### IV. Conclusion

For the foregoing reasons, I respectfully **RECOMMEND** that Defendants' **Motions for Summary Judgment** [#30 and 34] be **GRANTED**. Accordingly,

I FURTHER **RECOMMEND** that this case be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  January 14, 2011

BY THE COURT:

 s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge